IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 10, 2002 at Knoxville

## STATE OF TENNESSEE v. JAMES EDWARD PEDEN

**Appeal from the Circuit Court for Lincoln County**
**No. S0100048     Charles Lee, Judge**

---

**No. M2002-00269-CCA-R3-CD – Filed June 17, 2003**

---

The defendant, James Edward Peden, appeals his Lincoln County Circuit Court jury conviction of failure to appear, a Class E felony. He challenges the sufficiency of the convicting evidence and the trial court's ruling that allowed evidence of certain prior convictions to impeach his testimony. Finding no reversible error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J. and JERRY L. SMITH, J., joined.

John H. Richardson, Jr., Fayetteville, Tennessee, for the Appellant, James Edward Peden.

Paul G. Summers, Attorney General & Reporter; P. Robin Dixon, Jr., Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Brooke Grubb, and Ann Filer, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

The defendant's conviction of failure to appear is based upon his lunch-time disappearance from a jury trial in which he was the defendant. The evidence in the present case, including the defendant's testimony, showed that the defendant, who was on bond, appeared in court on the morning of June 12, 2001, for his scheduled jury trial on a misdemeanor charge of harassment. The defendant was present for the commencement of the trial; the jury was sworn, opening statements were made, and evidence was admitted. After the court recessed for lunch and instructed all parties that court would reconvene at 1:00 p.m., the defendant left the courthouse and did not return. Following an unsuccessful search for the defendant by law-enforcement agents, the court resumed the trial in the defendant's absence. The trial resulted in a mistrial. Ultimately, a grand jury indicted the defendant for failure to appear, and the court issued a warrant or a capias for the defendant's arrest.

The defendant testified that, at the time the harassment charge arose, he was living with his wife in Lincoln County. Before the trial, however, he separated from his wife and moved to Alabama. He testified that, as he was leaving the Lincoln County Courthouse for lunch on June 12, 2001, his brother met him and told him that their mother, who lived in Alabama and had been ill for some time, was in bad condition and at risk of death. The defendant testified that this news so disturbed and distracted him that, without thinking of his obligation to return to court, he drove to the Alabama town where his mother lived, which was approximately 30 miles south of Fayetteville, Tennessee, the situs of the trial in progress. When he found that his mother was not at home, he telephoned the hospital in Huntsville, Alabama, and learned that she was not a patient. He then drove to his sister's home in another town. Eventually, at about 4:30 or 5:00 in the afternoon of June 12, the defendant learned that his mother was not hospitalized and was not in grave condition. He then called his estranged wife in Lincoln County and learned that the harassment case had been mistried. He claimed that he believed that the case was over and that his presence in Lincoln County was no longer required. The defendant testified that on August, 14, 2001, he talked with his estranged wife by phone and learned for the first time that a warrant for his arrest had been issued. The defendant surrendered himself on that date.

Upon this evidence, the defendant was convicted of failure to appear. *See* Tenn. Code Ann. § 39-16-609(a) (1997). On appeal, he claims that the convicting evidence is insufficient and that the trial court erred in allowing the state to use evidence of certain prior convictions of the defendant as a means of impeaching him.

I.

First we examine the sufficiency of the convicting evidence. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W. 3d 1 (Tenn. 2000).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). This court may not substitute its inferences for those drawn by the trier of fact from the evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record

as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Cabbage*, 571 S.W.2d at 835.

A person commits failure to appear, *inter alia*, who unlawfully and "knowingly fail[s] to appear as directed by a lawful authority if the person: . . . (2) Has been lawfully released from custody, with or without bail, on condition of subsequent appearance at an official proceeding . . . at a specified time or place . . . ." Tenn. Code Ann. § 39-16-609(a) (1997). "It is a defense to prosecution under this section that: . . . (2) The person had a reasonable excuse for failure to appear at the specified time and place." *Id.* § 39-16-609(b) (1997).

In the light most favorable to the state, the evidence showed that the defendant, who was lawfully released from custody on bond, knowingly failed to appear at a specified time and place as required by the court that was trying him on a criminal charge. Although the defendant claims that his concerns for his mother's welfare equated to a reasonable excuse for his failure to appear, it was the jury's function to determine whether the claim was truthful and, even if it was truthful, whether the excuse was reasonable. The jury heard the evidence and clearly resolved these questions against the defendant. We may not disturb the jury's findings by drawing different inferences from the evidence or by making different determinations of evidentiary weight and credibility. The bottom line is that any rational trier of fact could have reached the verdict of guilty in the present case.

In his brief, the defendant essentially argues that Tennessee Rule of Criminal Procedure 43 excuses a criminal defendant from remaining present during his trial, once the trial has begun with him present. The Rule provides that the defendant's "voluntar[y] absent[ing] himself after the trial has commenced" shall not prevent the "further progress of the trial to and including the return of the verdict and imposition of sentence." Tenn. R. Crim. P. 43(b)(1). In our view, however, the objective of Rule 43(b)(1) is to provide for the continuation of a trial despite the defendant's voluntary absence, thus assuring that defendants may not obstruct the criminal justice process by disappearing during trial. Indeed, the Rule says that a defendant who voluntarily absents himself from his trial waives the *right* to be present. It does not excuse him from the *obligation* to be present at every stage of the trial that is imposed by Rule 43(a). *Id.* In our view, Rule 43(b)(1) avails the defendant nothing in his bid to persuade us that the evidence was legally insufficient to support his conviction.

II

In his other issue, the defendant claims that the trial court erred in ruling that, upon the defendant's testimony, the state could impeach him with his 1989 Alabama convictions of felony sexual abuse. *See* Tenn. R. Evid. 609(a) (providing for the impeachment of witnesses, including those who are defendants in criminal trials, through evidence of their prior convictions); *see also id.* 609(b) ("Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution," unless upon proper notice of a proponent's intended use of a conviction older than ten

years, the trial court finds in the interests of justice that the probative value "substantially outweighs its prejudicial effect.") The trial court determined that, although these 1989 convictions were imposed outside the ten-year period established by Rule 609(b), the defendant's confinement for a portion of his sentences tolled the running of the ten-year period and rendered the 1989 convictions available for impeachment via Rule 609(a). The defendant posits that the trial court misapplied the ten-year rule and failed to appropriately weigh the probative value against the prejudicial effect, as required by Rule 609(b).

Tennessee Rule of Evidence 609(a) authorizes the use of evidence of a witness' prior convictions for "the purpose of attacking the credibility of [the] witness." *Id.* § 609(a). If the witness denies the existence of a prior conviction on cross-examination, the impeaching party may establish the prior conviction "by public record." *Id.* 609(a)(1). To be employable as an impeachment conviction, the prior conviction must either be a felony, or a misdemeanor involving "dishonesty or false statement." *Id.* 609(a)(2). When the witness to be impeached is a defendant in a criminal case, the prosecution must "give the accused written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." *Id.* 609(a)(3). As noted above, if the prior conviction falls outside the ten-year rule, the court is obliged to determine whether the probative value on credibility *substantially* outweighs the prejudicial effect. *Id.* 609(b).

In the present case, the defendant concedes that the state gave proper notice of its intention to impeach the defendant with a number of prior convictions, including the two Alabama convictions of sexual abuse, and that the court held a Rule 609 hearing prior to the defendant's testimony. Following the mid-trial hearing, the court excluded a theft conviction as being stale pursuant to Rule of Evidence 609(b), a conviction of reckless endangerment, and a conviction of indecent exposure. The court ruled that the two Alabama convictions and a Tennessee aggravated assault conviction would be admissible. Upon cross-examination, these three convictions were used to impeach the defendant. On appeal, the defendant challenges only the use of the two Alabama convictions.

We review the trial court's determination of this issue via an abuse of discretion standard. *State v. Thompson*, 36 S.W.3d 102, 109 (Tenn. Crim. App. 2000).

In the present case, the state presented a copy of two Madison County, Alabama conviction judgments, which revealed that the defendant pleaded guilty to two counts of first-degree sexual abuse on November 28, 1989; however, the document further reflects that the defendant was ordered to serve in confinement eighteen months of an effective three-year sentence. Thus, if the defendant had served the entirety of the eighteen months, his release from confinement would have occurred on or about May 28, 1991. The indictment and capias that initiated the present case, however, were issued on June 19, 2001, more than ten years after May 28, 1991.

We have examined the record to determine whether the defendant served any additional time in confinement on the sexual abuse cases. *See State v. Edward Talmadge*

-4-

*McConnell*, No. E1998-00288-CCA-R3-CD, slip op. at 12 (Tenn. Crim. App., Knoxville, May 30, 2000) ("Time on probation or parole does not constitute confinement. . . . However, if the probation or parole was revoked, the ensuing confinement may, depending upon the circumstances of the revocation, be utilized in calculating the age of the conviction."), *perm. app. denied* (Tenn. 2001); *but see State v. Jesse Eugene Harris*, No. 87-294-III (Tenn. Crim. App., Nashville, June 29, 1988) (determining that, for purposes of applying Federal Rule of Evidence 609(b) via *State v. Morgan*, 541 S.W.2d 385, 389 (Tenn. 1976), the release from confinement occurred when the defendant was paroled a second time, ignoring an intervening parole period). At the mid-trial Rule 609 hearing, the prosecutor told the trial court that, after the defendant served his initial time in confinement on the sexual abuse cases, a probation violation warrant was filed in 1991. Then the following exchange occurred:

> Prosecutor: He was arrested and then on December 5[], 1991, he was
> restored to probation.
>
> The Court: He was in custody up until December of 1991.
>
> Prosecutor: That would be correct.

The problem is that the defendant's being in custody from November 28, 1989, *until* December 5, 1991, was not correct. The document upon which the prosecutor necessarily relied was trial Exhibit No. 1, a copy of certified judgments of the Madison County, Alabama convictions. The two sexual abuse felony convictions were imposed on November 28, 1989; the three-year sentences were imposed to run concurrently, eighteen months in confinement and eighteen months on probation. The Alabama record reveals that a probation violation petition was filed on July 3, 1991, approximately two months after the latest date on which the defendant would have been released from the original confinement. The record shows that, on August 15, 1991, the court set bond in the amount of $5,000, although no mention is made of whether the defendant was in custody at the time. On October 8, 1991, the court ordered the setting of the revocation hearing but did not state whether the defendant had been taken into custody or had made bond. The next order was entered on December 5, 1991, when the judge restored the defendant to probation and added the proviso, "Jail credit ordered." The judge made identical or substantially similar notations and orders in both conviction cases. Thus, although the trial court in the present case may have believed otherwise, the defendant did not remain in custody constantly from November 28, 1989, until December 1991.

Under one view of calculating the age of these convictions, subsequent confinement pursuant to the sentence arguably may be tacked on to the initial confinement. *See Edward Talmadge McConnell*, slip op. at 12. Under that view, the issue is whether, by tacking on, the defendant served enough additional time on his effective sexual abuse sentence to constructively extend the release-from-confinement period to a date less than ten years before June 19, 2001. The defendant apparently served some additional time, and the Alabama judge did order that time credited to the effective sentence; however, we cannot discern from the record when the defendant was arrested on the revocation petition or when, or if, he made bond prior to the December 1991

hearing. Thus, the record does not reveal whether the defendant served enough additional time to extend, by tacking, his release-from-confinement calculation to June 19, 1991, or beyond.

Under another view of calculating the age of these convictions, the release from confinement is calculated from the date of final release of the defendant on parole following an earlier parole revocation. *See Jesse Eugene Harris.* Under this view, the final release following a parole revocation is the measuring date, and apparently any intervening periods of release would be ignored. Perhaps the trial judge had the *Jesse Eugene Harris* rule in mind when he apparently measured the release date from December 5, 1991. In our view, however, even if *Jesse Eugene Harris* is still the prevailing rule, it should not have been applied. The defendant's probation was not revoked. Any jail time being served was accumulated while the revocation warrant was pending and was not the result of a revocation.

Thus, upon this record, the Alabama sexual abuse convictions did not fall within the savings exception to Rule 609(b)'s ten-year eligibility period.[1] That said, those convictions were nevertheless employable by the state below had the court determined that the probative value on credibility substantially outweighed the prejudicial effect. However, because the trial judge believed that the convictions were not banned by the ten-year rule, he did not on the record balance the probative value against the prejudicial effect and did not make any findings. For this reason, we conclude that the trial court erred in ruling that the Alabama convictions were admissible for impeachment purposes.

This determination, of course, begs the question whether the lower court's error was harmless. *See* Tenn. R. Crim. P. 52(a) (only errors "affirmatively appear[ing] to have affected the result of the trial on the merits" will result in reversal).

When the defendant testified at trial, the state impeached him by asking whether he was the same James Edward Peden who was convicted in Alabama in 1989 of "Sexual Abuse 1st," and when the defendant answered in the affirmative, the prosecutor asked if he was also convicted of a second offense of "Sexual Abuse 1st." When the defendant admitted that he had, he was asked about the 1992 Tennessee conviction of aggravated assault, which he also acknowledged.[2]

In view of the whole record of the trial proceedings, we conclude that the error in using the Alabama sexual abuse convictions was harmless. Apart from the evidence of the Alabama convictions, the jury was aware that the defendant had a checkered past. It knew that the present charge of failure to appear emanated from the defendant's earlier criminal charge of harassment. The defendant does not dispute that the trial court properly admitted evidence of his 1992 aggravated assault conviction as Rule 609 impeachment evidence. Moreover, the defendant admitted on cross-

---

[1] The burden of establishing the admissibility of the impeaching evidence rested upon the state. *See Thompson*, 36 S.W.3d at 311.

[2] Counsels' closing arguments were omitted from the trial record, and we are, therefore, unable to determine to what extent the prosecutor relied upon the prior convictions as credibility impeachment.

examination that he was not unfamiliar with the court system, and when asked whether he had attended preliminary hearings before, he responded, "Yeah, I have been to court several times."

In addition, the prosecutor exposed some credibility issues by rigorously and effectively cross-examining the defendant at trial, and the trial court admonished the jury to use the prior-conviction evidence only for impeachment purposes.  Finally, our courts have recognized that unfair prejudice is more likely to result from the use of prior convictions to impeach a testifying defendant when the charge upon which the prior conviction was based is similar to the case under review. *See, e.g., State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999) ("When an impeaching conviction is substantially similar to the crime for which the defendant is being tried, there is a danger that jurors will erroneously utilize the impeaching conviction as propensity evidence of guilt and conclude that since the defendant committed a similar offense, he or she is probably guilty of the offense charged.")  In the present case, however,  the crime of sexual abuse is dissimilar to the offense of failing to appear.  Viewing the whole context of the trial, we conclude that the use of the Alabama convictions for impeachment purposes was harmless error.

Therefore, discerning no reversible error, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE